IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| DANNY WATKINS<br><br>*Plaintiff*<br><br>CITY OF LEBANON, TENNESSEE<br>CORNELIUS RAY HARRIS<br><br>*Defendants* | Case No.<br><br>JURY DEMANDED |

# COMPLAINT

Plaintiff DANNY WATKINS states for his Complaint as follows:

## Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by federal statutes and the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

1

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district and all defendants are residents of the State of Tennessee. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

## Parties

5. Plaintiff Danny Watkins is a Black resident of Wilson County, Tennessee.

6. Defendant City of Lebanon is a municipal government organized under the laws of the State of Tennessee and situated within Wilson County. It may be served through its attorney, Andy Wright, at 200 N Castle Heights Avenue, Lebanon, TN 37087.

7. Defendant Sergeant Cornelius Ray Harris is the Codes Enforcement Supervisor for the City of Lebanon Police Department. He is the highest-ranking officer in charge of the Codes Enforcement department for the City of Lebanon. Sgt. Harris is a resident of Wilson County, Tennessee and may be served with process at 1135 Coles Ferry Pike, Lebanon, Tennessee 37087-5614.

## Factual Allegations

8. In 2018, the Lebanon City Council voted to merge its Codes Department into the Lebanon City Police Department.

9. Since the merger, enforcement of the City of Lebanon's municipal ordinances is among the law enforcement activities conducted by the City of Lebanon's

police department.

10. The Chief of Police for the City of Lebanon is designated with final policymaking authority over law enforcement activity by city police officers pursuant to Lebanon Municipal Code 6-101, which states that "[a]ll police officers shall obey and comply with such orders and administrative rules and regulations as the police chief may officially issue."

11. Within the authority granted by Lebanon Municipal Code 6-101, the Chief of Police administratively maintains a semi-autonomous "Codes Enforcement Office" within the police department where a single individual – the codes enforcement supervisor – is delegated with broad decisionmaking authority over the handling of municipal property code violations.

12. The Codes Enforcement Supervisor's authority over property code violations includes ultimate discretion in the investigation, charging, and prosecution of violations of Lebanon Municipal Code 17-102 through 17-105.

13. Prior to the year 2022, the Chief of Police promoted Sgt. Harris to the position of Codes Enforcement Supervisor.

14. Sgt. Harris's authority included whether to issue citations for observed violations of Chapter 17 of the Lebanon Municipal Code.

15. Sgt. Harris's decisions regarding whether to cite an individual for a violation of Chapter 17 of the Lebanon Municipal code are final and unreviewable by any other officer within the City of Lebanon Police Department.

16. Sgt. Harris's decisions regarding investigation and enforcement of Chapter

17 of the Lebanon Municipal Code are not constrained by the official policies of superior officials.

17. Sgt. Harris maintains a close personal friendship with a contractor named John Hart.

18. Upon information and belief, Sgt. Harris and John Hart mutually engage in for-profit business endeavors.

19. Plaintiff Watkins and his family own rental properties in the City of Lebanon.

20. Plaintiff Watkins previously maintained a business relationship with John Hart.

21. John Hart contracted with Plaintiff Watkins for maintenance/repair work and other services connected with Watkins' rental properties in the City of Lebanon.

22. Those properties include a seven-unit apartment building located at 900 Carthage Street, Lebanon, Tennessee.

23. Additionally, Hart managed the Uptown Motel, one of Mr. Watkins' rental properties located at 316 N. Cumberland St., Lebanon, TN 37087.

24. Throughout his dealings with Mr. Watkins, Mr. Hart claimed that he maintained a close relationship with the City of Lebanon Codes Department, even referring to Defendant Harris as "my brother" in the Codes Department.

25. In May of 2022, Plaintiff Watkins rejected a bid by Mr. Hart in favor of another contractor for a remodel of one of the rental properties.

26. Around this same time, Plaintiff Watkins terminated Hart's management

4

Case 3:23-cv-00452    Document 1    Filed 05/05/23    Page 4 of 12 PageID #: 4

of the Uptown Motel.

27. Around this same time, the City of Lebanon Codes Department and Sgt. Ray Harris commenced a campaign of targeted codes enforcement against Danny Watkins.

28. As part of the targeted campaign of codes enforcement, Sgt. Harris issued two citations against Mr. Watkins for violation of Chapter 17 of the Lebanon Municipal Coe in May 2022. (*See* Exhibit 1 – May 6 Citation and Exhibit 2 – May 28 Citation).

29. Lebanon Municipal Code 17-102 through 17-105 states:

**17-102. Roll out containers.** For residential households which elect and are subsequently selected to participate in the curbside garbage collection system, the city will provide, at no cost to the resident, one 90 gallon roll out container. The commissioner of public works, or his designated representative, may request that any residential household regularly exceeding 90 gallons of garbage in a collection period make other approved special arrangements or purchase a second container from the city. (Ord. 91-843)

**17-103. Placement of containers for collection.** It shall be the responsibility of each occupant, on the scheduled day of collection, to place their container on the property side of the curb or street, or at the edge of the alley where serviceable alleys are available, or in a city designated location for hall be placed in such a location as to be readily accessible for removal by the city. (Ord. 91-843)

**17-104. Restrictions on placement of containers.** The container shall be placed in such a manner as not to interfere with power lines, tree or scrub branches, parked cars, vehicular traffic, or in any other way that would constitute a public hazard or nuisance. Garbage containers shall not be placed, without the express permission of the city, on a public sidewalk, in the street, or in a drainage ditch. (Ord. 91-843)

**17-105. Hours for placement of containers for collection.** Containers shall be placed for collection no earlier than dusk on the day before collection, and no later than 7:30 A.M. on the scheduled day of collection. Containers must be removed from the curb, street,

5

Case 3:23-cv-00452    Document 1    Filed 05/05/23    Page 5 of 12 PageID #: 5

or alleyway, no later than 7:00 P.M. on the day of collection. (Ord. 91-843)

30. Title 17 of the Code creates obligations for *occupants* of residential households connected with the City's garbage collection system, but does not create any obligation for *landowners* who do not occupy the premises.

31. Sgt. Harris knew or should have known that Mr. Watkins, as a non-occupant owner, had no duty under Chapter 17 of the Code concerning the garbage containers at 900 Carthage Highway.

32. Sgt. Harris knew that Mr. Watkins did not reside at 900 Carthage Highway because he correctly identified Mr. Watkins' address as "1012 Berea Church Rd." on the citations he issued.

33. The garbage containers at issue were clearly designated with spraypainted letters A through G, corresponding to two of the seven units:



34. Sgt. Harris specifically referenced "containers A & C" in the citation he

issued against Mr. Watkins on May 6, 2022:

> ARE THERE ANY CHARGES IN GENERAL SESSIONS? YES___ NO___ (IF YES, LIST CHARGES IN NARRATIVE SECTION FOR MUNICIPAL JUDGE.)
> I was advised to send to Owners POBOX. Numerous warnings given. Containers A:C left out. Trash pick up is Tuesday, today is Friday (5/6/22).
> Notification Given: _____
> INDIVIDUALS NEEDING AUXILIARY/AIDS FOR EFFECTIVE COMMUNICATION AND/OR OTHER REASONABLE ACCOMMODATIONS CONTACT THE ADA COMPLIANCE COORDINATOR BY CALLING 615.443.2850.
>
> THE UNDERSIGNED FURTHER STATES THAT HE/SHE HAS JUST AND REASONABLE GROUNDS TO BELIEVE AND DOES BELIEVE, THAT THE PERSON NAMED ABOVE COMMITTED THE OFFENSE HEREIN SET FORTH, CONTRARY TO LAW.
> THIS 6 DAY OF May 20 22 TIME 13:35 PM  Sgt. Harris  63 Harris
> RANK  OFFICER NAME (PRINT)  BADGE/ID NO.

35. On May 28, 2022 Sgt. Harris returned to 900 Carthage Highway and issued another citation against Danny Watkins for violation of Code Section 17-105.

36. Danny Watkins is Black.

37. Each week, hundreds of occupants within the City of Lebanon openly violate Code Section 17-105.

38. The vast majority of these occupants who openly violate Code Section 17-105 are White. These violating occupants include John Hart.

39. Despite the ubiquity of Code Section 17-105 violations within the City of Lebanon, the City of Lebanon Police Department issued only four misdemeanor citations for trash container violations under Code Section 17-105 in the year 2022.

40. Only two of those citations were issued against non-occupant landowners.

41. Both citations against non-occupant landowners were issued to Danny Watkins by Sgt. Harris.

42. Mr. Watkins had to hire a lawyer to defend the charges.

43. Sgt. Harris appeared at the court hearings and vigorously argued against the dismissal of Mr. Watkins' citations.

44. Both citations were dismissed because Mr. Watkins had no legal duty arising under Chapter 17 of the Lebanon Municipal Code with respect to the apartments at 900 Carthage Highway.

45. Sgt. Harris and the officers under his command within the LPD's Codes Enforcement Office ignored thousands of open and obvious violations of Code Section 17-105 (failure to remove garbage containers by 7:00 p.m. on the day of collection) by White property owners and occupants during the year 2022.

46. Many of these violations occurred within eyesight of Mr. Watkins' properties.

47. Sgt. Harris specifically singled out Mr. Watkins for enforcement of Chapter 17 of the municipal code based on either Mr. Watkins' race or out of personal animosity arising from the falling out between Mr. Watkins and John Hart.

48. Sgt. Harris's motive is to drive Mr. Watkins out of business by selectively enforcing the Lebanon Municipal Code against Mr. Watkins.

### COUNT 1: 42 U.S.C. § 1983 – VIOLATION OF THE RIGHT TO EQUAL PROTECTION GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
(BOTH DEFENDANTS)

49. Plaintiff Watkins incorporates by reference paragraphs 1 through 49 as if restated fully herein verbatim.

50. The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.

51. Sgt. Harris acted under color of law using his authority as Codes Enforcement Supervisor to target Plaintiff Watkins in a campaign of selective codes enforcement which included issuing the two citations against Danny Watkins in May 2022 for violation of the Lebanon Municipal Code § 17-105.

52. The citations are misdemeanors pursuant to Lebanon Municipal Code 17-203 and Ordinance of the City Council of the City of Lebanon, Tennessee No. 01-2240, Section 3.

53. Sgt. Harris knew or should have known that no probable cause existed to support either citation against Danny Watkins for violation of Title 17 of the Lebanon Municipal Code.

54. Sgt. Harris intentionally treated Danny Watkins differently from similarly situated property owners when he issued the two citations against Mr. Watkins in May, 2022.

55. Similarly situated White property owners were not subjected to code citations for Lebanon Municipal Code § 17-105, despite engaging in exactly the same conduct within eyesight of Mr. Watkins' properties.

56. Mr. Watkins was targeted for selective enforcement of the Lebanon Municipal Code § 17-105 based upon his race.

57. Alternatively, Mr. Watkins was targeted for selective enforcement of Lebanon Municipal Code § 17-105 based on the personal vendetta by Sgt. Harris' close friend, John Hart.

58. John Hart's personal animosity arising from Mr. Watkins' termination of

their former business relationship is an arbitrary basis for the selective enforcement of Lebanon Municipal Code § 17-105 against Mr. Watkins.

59. Defendant City of Lebanon is liable for the conduct of Sgt. Harris because he acted as a final policymaker with respect to enforcement of Chapter 17 of the Lebanon Municipal Code as outlined above.

60. Additionally, the City of Lebanon maintained a widespread custom of enforcing Lebanon Municipal Code § 17-105 disproportionately against Black residents. This custom is evidenced by the fact that no citations were issued for violation of Lebanon Municipal Code § 17-105 to White property owners during the year 2022, despite Whites committing the majority of violations and being identically situated to Mr. Watkins with respect to owning properties where trash containers were not removed from the curb by 7:00 pm on the day of collection.

## DAMAGES

61. As a direct and proximate result of the Defendants' violations of his federally protected rights, Plaintiff Watkins has suffered:

   a) Economic damages,

   b) Mental suffering,

   c) Emotional Distress.

62. In addition to compensatory damages, Plaintiff Watkins requests an award of punitive damages against Sgt. Harris based on the fact that Harris intentionally, or at the very least, recklessly engaged in the campaign of codes enforcement against Plaintiff Watkins in violation of his right to equal protection. Such award is necessary

to punish Defendant Harris and deter similar conduct in the future.

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Danny Watkins requests:

I. Process be issued and that each Defendant be required to respond within the time provided by the Federal Rules of Civil Procedure;

II. A jury be empaneled to try this case;

III. That a Declaratory Judgment be entered finding that the Defendants' actions violated Danny Watkins' constitutional right to Equal Protection;

IV. That Plaintiff Watkins be awarded nominal damages against both defendants;

V. That Plaintiff Watkins be awarded compensatory damages against both defendants;

VI. That Plaintiff Watkins be awarded punitive damages against Defendant Harris;

VII. That Plaintiff Watkins be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

VIII. For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Clark*
Wesley B. Clark, #32611
Frank R. Brazil, #34586
BRAZIL CLARK, PLLC
2901 Dobbs Avenue
Nashville, TN 37211
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com

12
Case 3:23-cv-00452   Document 1   Filed 05/05/23   Page 12 of 12 PageID #: 12